## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

THERESA GARNER,

              Plaintiff,

                                    Case No. 20-cv-147-pp

   v.

DEPARTMENT OF JUSTICE, *et al.,*

              Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S EXPEDITED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTIVE RELIEF (DKT. NO. 8), DENYING PLAINTIFF'S THIRD MOTION FOR PERMISSION FOR ELECTRONIC CASE FILING (DKT. NO. 9), GRANTING IN PART AND DENYING AS MOOT IN PART PLAINTIFF'S MOTION TO CORRECT RECORD (DKT. NO. 12) AND DISMISSING CASE**

---

On January 30, 2020, the plaintiff, representing herself, filed a complaint titled "Motion to Enforce (2) Title VII, As Amended Settlement Agreements;" the caption appears to name around eleven defendants including departments of the federal government, department heads and a handful of individuals. Dkt. No. 1. The plaintiff also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. Four days later, she filed a declaration. Dkt. No. 4. Two weeks after that, she followed with a "motion for permission for electronic case filing." Dkt. No. 5.

The plaintiff's filings resumed in June of 2020; on June 2, she filed a "second motion for permission for electronic case filing and motion," dkt. no. 6,

and an amended complaint (also titled "Motion to Enforce (2) Title VII, As Amended Settlement Agreements"),[1] dkt. no. 7. The caption of this pleading named the "Department of Justice, *et. al.*" as defendants. Id.

A week later, the plaintiff filed an "expedited emergency motion for a temporary restraining order and permanent injunctive relief," dkt. no. 8, a declaration "in support of plaintiff's motion for a temporary restraining order and permanent injunctive relief," dkt. no. 11, and a "third motion for permission for electronic case filing and motion," dkt. no. 9. At the same time, the plaintiff filed a "Notice and Motion to Enforce (2) Title VII, As Amended Settlement Agreements." Dkt. No. 10. This pleading appears to be a second amended complaint; it names some fifty defendants. Id.

On June 24, 2020, the plaintiff filed a "Motion for Correction of Record Doc. No. 10, Second Motion for IFP, Doc. 2, Fourth Motion to EFile, And Second Motion for an Expedited Emergency Temporary Restraining Order Doc. 8." Dkt. No. 12.

This order resolves all the pending motions and dismisses the case for failure to state a claim upon which a federal court may grant relief.

## I. Plaintiff's "Motion for Correction of Record Doc. No. 10, Second Motion for IFP, Doc. 2, Fourth Motion to EFile, And Second Motion for an Expedited Emergency Temporary Restraining Order Doc. 8" (Dkt. No. 12)

The first document that the plaintiff filed in this case as "Motion to Enforce (2) Title VII, As Amended Settlement Agreements." Dkt. No. 1. The

---

[1] Elsewhere in the caption of the pleading, the plaintiff referred to it as the "1st Amended Petition and Motion."

plaintiff later filed a similar document with the same title that contained additional allegations. Dkt. No. 7. The court construes this second document as an amended complaint. Under Federal Rule of Civil Procedure 15, a party has the right to amend her pleading one time "as a matter of course" (without having to ask the court for permission) if she does so within twenty-one days after serving the complaint. In this case, the January 30, 2020 complaint had not yet been served, so the plaintiff was free to amend it without asking the court's permission.

A week later, the plaintiff filed a document titled "Notice and Motion to Enforce (2) Title VII, As Amended Settlement Agreements." Dkt. No. 10. The clerk docketed that pleading as "Motion to Enforce Title VII as Amended Settlement Agreements." Id. Two weeks later, the plaintiff filed a motion asking the court to correct the record under Rule 60(a). Dkt. No. 12. The motion asks the court to consider "docket entry 10 . . . as a new complaint, and not as a motion." Id. at 1.

The court will construe the pleading at Dkt. No. 12 as a motion for leave to file a second amended complaint. Because the plaintiff already has used her one opportunity to amend the complaint without the court's permission, she now "may amend [her] pleading only with the opposing party's written consent or the court's leave." In order to address all the plaintiff's claims efficiently and conserve judicial resources, the court will allow the plaintiff to file Dkt. No. 10 as a second amended complaint and will order that Dkt. No. 10 is the operative complaint.

3

In the same motion—Dkt. No. 12—the plaintiff explained that on June 11, 2020, she filed a declaration "with exhibits and a separate video labeled Exhibit 54." Dkt. No. 12 at 2. She points out that "[t]his separate exhibit is not noted as received separately by the District Court," directing the court to Dkt. No. 11. Id. She also asks the court to address her other pending motions. Id. As of August 28, 2020, the docket correctly reflects that "(Ex 65 is a FLASH DRIVE with Video that is NOT available electronically.)" Dkt. No. 11. The court addresses the plaintiff's other pending motions below.

## II. Motion for Leave to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)

### A. Plaintiff's Ability to Pay the Filing Fee

To allow the plaintiff to proceed without prepaying the filing fee, the court first must decide whether the plaintiff can pay the fee; if she cannot, it must determine whether the lawsuit is frivolous, malicious or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i)-(iii).

The plaintiff's request states that she is unemployed, unmarried and has no dependents. Dkt. No. 2 at 1. The plaintiff lists $1,053 in monthly income from a disability pension, monthly expenses of $900; she owns a home valued at $28,000 and $3,200 in "other property of value." Id. at 2-4. Based on the plaintiff's limited and fixed income, the court concludes that the plaintiff cannot afford to pay the filing fee.

This does not mean that the plaintiff does not owe the filing fee; the Seventh Circuit has held that "every . . . person who proceeds [without prepaying the filing fee]" is "liable for the full fees," because "all [28 U.S.C.]

4

§1915(a) does for any litigant is excuse the *pre*-payment of fees." <u>Robbins v. Switzer</u>, 104 F.3d 895, 898 (7th Cir. 1997). The plaintiff must pay the filing fee as she is able.

B.    <u>Screening</u>

The court next decides whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2). In determining whether the complaint states a claim, the court applies the same standard that control a defendant's motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plan statement of the claim" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff need not plead every fact supporting the claims; the plaintiff needs only to give the defendants fair notice of the claim and the grounds upon which it rests. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." <u>Id.</u> Put another way, the complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff

5

pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557).

A claim is legally frivolous when it lacks an arguable basis in either law or fact. Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). Because the plaintiff represents herself, the court must liberally construe the allegations of her complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Denton v. Hernandez, 504 U.S. 25, 31 (1992). The court holds such a complaint to a less stringent standard than a pleading drafted by a lawyer. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). That said, the court may find the plaintiff's complaint factually frivolous if the facts are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." Felton v. City of Chi., 827 F.3d 632, 635 (7th Cir. 2016) (citing Denton, 504 U.S. at 32-33).

A.    Facts Alleged in the Complaint

The plaintiff states that she "recently retired" as "one of the top federal employee[s] in the United States" who worked simultaneously within the Department of Commerce-Bureau of the Census, the Department of Labor-Bureau of Labor Statistics and the Department of Defense-Defense Logistics Agency. Dkt. No. 10 at 3. She sues to enforce what she refers to as "Title VII, as

6

amended, Settlement Agreement," saying that she has "consolidated multiple meritorious District Court lawsuits DIRECTLY CAUSED by the Federal Defendants ongoing retaliatory acts perpetrated against a federal employee involving multiple 3rd parties, for having participating in Title VII, as amended District Court protected activities." Id. at 1. She says that the Department of Justice and the defendants she has named conspired with and solicited third parties to use their offices to influence and harass the plaintiff to stop her litigation. Id. at page 2, ¶2. She indicates that on March 5, 2018, she was falsely imprisoned/detained, that her electronic devices were confiscated, that her email and cell phone were hacked or redirected, that her credit cards were taken over, her location was tracked and her vehicle was tracked and confiscated "by the Buckeye Police Department." Id.

The plaintiff asserts that the third parties "made false claims and statements that she came out of her home in Buckeye, AZ 'welding a cane' . . . trying to beat the [Buckeye Police Department] officials, when the car was 'recovered' by BPD, the same officials were responsible for 'taking' the vehicle." Id. at page 2, ¶3. The plaintiff says she never was notified, but that her family members "were phoned with this ridiculous story of 'welding a cane;'" the plaintiff says that she had sold her home and moved out of state. Id. She alleges that this "matter" was perpetrated "against [her], a federal employee, because of her race (African-American), her age (over 40) and EEO protected activities." Id.

She asserts that under "[n]on-[d]isparagement" settlement agreements, "the agency" agreed to not make any statements that reflect adversely on her employment and to provide her with a "clean record" by expunging any reference to adverse employment action in her official personnel file. Id. at 3-4. The plaintiff alleges that the "federal defendants" violated these agreements by furnishing negative employment references and by not expunging her personnel file. Id. The federal defendants harmed her employment opportunities with "defamatory, retaliatory communications," she contends, "[o]n or about FY2014-present" when they falsely stated that she "is an impostor," has a husband, has a son, "is a Terrorist or dangerous," is mentally ill "and solicited 3rd parties help 4+ years," is wanted by and on the "run" from the FBI and has schizophrenia. Id. at 3.

In the "Statement of Claim" section of the second amended complaint, the plaintiff lists sixty counts. Id. at pages 4-12. Before the first count, she included a subsection A. titled "Retaliation—Breach of Settlement," and stated that she was moving the court for enforcement of two "Title VII as amended settlement agreements, pursuant Title VII, as amended, F.R.C.P. Rule 60(b)(2) against the captioned defendants." Id. at 3. In Count 1, she alleges that the "federal defendants" violated "Non-Disparagement Settlement Agreements." Id. In Count 2, she alleges that certain documents should have been expunged from "file" and that "[t]he agency" agreed to provide "appellant" with a clean record by expunging "all references to the **[Adverse Action]** from **[his/her]** official personnel file." Id. at 4. In Count 3 the plaintiff alleges "numerous

8

events of ongoing retaliation;" she says that the Title VII settlements provided that there should be no discrimination or retaliation against her. Id. Count 4 alleges that the defendants "engag[ed] in an unlawful pattern of twice occurring incident of death threats, threats, defamatory communication, soliciting numerous 3rd parties, including contacts with the State of Wisconsin Capitol Police, DOA, D.H.H.S., Stat/City officials employees," in disregard of the binding settlements. Id.

Count 5, which the plaintiff says is an "example," is the first count to reference a named individual. The plaintiff alleges that a "State of Wisconsin office, Sergeant Adam Haas . . . , toting a gun and badge, threatening misconduct, followed, stalked and confronted [the plaintiff] on the 7th floor at the **Equal Rights Department** . . . Milwaukee, Wisconsin, unwarranted for no valid reason or explanation." Id. The next several counts—Counts 6 through 9—continue the plaintiff's allegations about what Haas allegedly did, including "flag[ging] and blacklist[ing]" the plaintiff from entering the Equal Rights Department Building on February 5, 2020 for no good reason, "violating her civil rights at the ERD." Id. at 5, Count 7.

The remaining fifty-one counts allege an assortment of one- to two-sentence allegations against the defendants generally or certain departments: defamation, unlawful tracking and surveillance, false statements, harassment, death threats, false imprisonment, use of military deadly force, falsely alleging that the plaintiff used a cane to beat people up at the Holiday Inn Hotel lobby. The plaintiff asserts that in 2016, "DOJ Assistant Attorney Ann E Harwood"

9

asked the plaintiff if she had been in a mental institution to smear the plaintiff's name and that Harwood obtained the plaintiff's medical records and released them without consent. Id. at 7-8, Counts 24-28. She alleges facts around an "unwarranted and premeditated agenda referral to Tanya Cummings a behavioral health personnel from Echols to [the plaintiff]." Id. at 8, Count 30. She makes allegations that people falsely claimed that she was not working but was collecting a paycheck and an unemployment check. Id., Count 31. She makes several claims about the Buckeye Police Department, including that they are corrupt and dishonest. Id. at 9-11, Counts 38-41, 48-50. She says that the State of Arizona refused to prosecute. Id. at 10, Count 44. In Count 57, the plaintiff alleges that Wisconsin officials Nichelle Jackson, Hal Jenkins, Patrick W. Pauly and Mike Sundberg denies her access to her employment endeavors by "failing to replace lead laterals for her child care center employment, blocking her water account, billing disclosure, water turn on, meter installation, lead lateral replacement, customer service support," and that "Director Ms. Dittmer was requested to correct this 10 months ordeal since August 1, 2019." Id. at 12, Count 57. She alleges that the defendants have refused to turn on the water and replace the lead lateral and have directed plumbers not to start or complete work on her "employment endeavors." Id., Counts 59-60.

The plaintiff attached seventy-five pages of documents to the second amended complaint. They include photos of unrecognizable images that the plaintiff says prove deployment of martial law, photos of vehicles she says were

tracking her, photos of computer screens which she says prove her claims of hacking, photos of towels which she says have something to do with hotels and cranberry juice, photos of court documents and police reports, photos of what the plaintiff claims is her car and damage she claims it suffered and pictures of text messages the plaintiff claims were deleted by hackers. Dkt. No. 10-1.

The defendants include the United States, several states, several federal agencies and departments, cabinet secretaries, "Lodgepros Buckeye, LLC, a foreign limited liability company," two Holiday Inn Express hotels in West Buckeye and other hotels and hospitality companies, clerks, the city of Buckeye, individual Buckeye police officers, the FBI, individual FBI agents, officials of the Maricopa County Special Health Care District, doctors, Department of Justice employees, the Department of Justice, the United States Secretary of the Air Force and "John Does 1-10 and Jane Does 1-10." Dkt. No. 10 at 1.

The plaintiff seeks damages, specific performance, declaratory relief and injunctive relief. Id. at 16-17. She asks for "42 X $10,000,000" for her defamation claims, $16,500 to compensate for the loss of her vehicle, $236,000 to compensate for the loss of her home, $300,000 as compensatory damages, $100,000,000 for "wrongful death, pain, and suffering, interest," "specific performance and a confession of judgment as part of the settlement," "no future derogatory references," amendments and corrections to her personnel records, "all adverse actions and/or pending adverse actions caused by the unclean hands of the defendants be corrected by letter," a restraining order

against all defendants, "full disclosure of her employment record, [] background [and] criminal clearance record for the entire United States provided within 15 days of the Court order in writing," the court to write "a letter to each agency named in this motion, the weatherization program, loan compliance program and individuals . . . disclosing the false and defamatory communication has been corrected," "[a] copy of receipt of the certified letters . . . within 15 days of the order," and "[l]astly, . . . any other appropriate injunctive relief that [the court] deems reasonable." Id.

    B.   <u>Analysis</u>

The second amended complaint makes fifty claims—many unrelated to each other and most failing to name any individual defendants—against some fifty unrelated defendants. The Federal Rules of Civil Procedure allow a plaintiff to raise all claims against a single party in a single complaint. Fed. R. Civ. P. 18(a). A plaintiff cannot, however, include other defendants in that complaint unless she has a claim against *all* of the defendants "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and there is a question of law or fact common to all of the defendants. Fed. R. Civ. P. 20(a). The allegations in the second amended complaint range from the Buckeye Police Department telling the plaintiff's family that she "welded a cane at her home in Arizona" to a Department of Justice Attorney "continuously asking if the [p]laintiff had been in a mental institution" during an unexplained deposition. Even liberally construing the complaint, the only possible fact common to all of the claims and all of the

defendants is the plaintiff's belief that "the defendants" are engaged in a conspiracy to defame the plaintiff, harass the plaintiff and allegedly violate settlement agreements. Many of the named defendants are never mentioned in the body of the complaint.

The second amended complaint does not (1) identify each individual who allegedly violated the plaintiff's rights, (2) explain what each defendant did, (3) explain when they did it or (4) explain where they did it. It rarely provides dates for the alleged events and sometimes provides only the year. Most of the claims fail to identify the specific defendant who allegedly took the action; nearly every claim references "the defendants." Often the second amended complaint fails to explain how the plaintiff was harmed by the actions she alleges and does not specify what relief she seeks from which defendants.

Federal notice pleading requires more than merely naming a defendant in a caption or a conclusory statement that a defendant harmed a plaintiff; "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." Griffin v. Bd. of Regents of Univ. of Wis. Sys., No. 20-1575, 2020 WL 5054832, at *3 (7th Cir. Aug. 27, 2020) (quoting Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013)). "That is true even for allegations of conspiracy. Although every conspirator is responsible for others' acts within the scope of the agreement, it remains essential to show that a particular defendant joined the conspiracy and knew of its scope." Knight, 725 F.3d at 818. The second amended complaint does not make such a showing.

13

Many of the named defendants are immune from suit. The second amended complaint names federal officers such as "Patrick M. Shanahan, Secretary of Defense," "Secretary of Labor, Eugene Scalia," "FBI Agent Schafer" and "Secretary Wilbur Ross." "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Michigan v. U.S. Army Corps of Engineers, 667 F.3d 765, 774 (7th Cir. 2011) (quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994)). In other words, the United States "cannot be sued unless it gives express consent to the jurisdiction of the court in which it is sued." Dawson v. Great Lakes Educ. Loan Serv's, Inc., No. 15-cv-475, 2016 WL 426610, at *3 (W.D. Wis., Feb. 3, 2016) (citing Hercules, Inc. v. United States, 516 U.S. 417, 422 (1996)).

> It is the plaintiff's burden to demonstrate that the federal government has waived its sovereign immunity and consented to suit. Macklin v. United States, 300 F.3d 814, 819 (7th Cir. 2002); Welch v. United States, 409 F.3d 646, 650-51 (4th Cir. 2005); Stockman v. Federal Election Commission, 138 F.3d 144, 151 (5th Cir. 1998). All purported waivers of sovereign immunity must be "strictly construed, in terms of [their] scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). If the plaintiff fails to meet its burden of establishing that the federal government waived its sovereign immunity, the case must be dismissed. Macklin, 300 F.3d at 819.
>
> In order to carry [the] burden of establishing the federal government has consented to be sued, [a] plaintiff must identify a federal statute in which "Congress has expressly and unequivocally waived [its] sovereign immunity." Barmes v. United States, 199 F.3d 386, 388 (7th Cir. 1999).

Id. The second amended complaint does not allege that any government defendant has waived its sovereign immunity as to any of the plaintiff's claims.

14

Nor has the plaintiff identified any statute expressing the government's intent to waive immunity in the context of any of her claims.

Perhaps the plaintiff intended to bring a <u>Bivens</u> case for deprivation of constitutional rights. <u>Bivens v. Six Unkown Named Agents</u>, 403 U.S. 388 (1971). To state a <u>Bivens</u> claim, however, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676. The amended complaint does not allege facts against any individual defendant showing such a deprivation. The only federal officers that the complaint individually describes are Department of Justice Attorneys Ann Harwood and Mark D'Allesandro. The complaint does not allege any actions by either of these individuals that violated an established constitutional right.

The Eleventh Amendment bars claims against nonconsenting *state* governments by citizens of another state or citizens of a foreign country. <u>Carmody v. Bd. of Trs. of Univ. of Ill.</u>, 893 F.3d 397, 403 (7th Cir. 2018) (citing <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974)). The Eleventh Amendment also bars suits against nonconsenting states by its own citizens. <u>Edelman</u>, 415 U.S. at 663. The second amended complaint names as defendants the States of Wisconsin, Ohio and Arizona. Dkt. No. 20 at 1. The second amended complaint does not assert that these states have waived immunity or suggest that Congress has otherwise abrogated immunity. The Eleventh Amendment bars the plaintiff's claims against Wisconsin, Ohio and Arizona.

15

Many of the actions alleged in the second amended complaint do not constitute violations of federal law or the federal Constitution. For example, the plaintiff claims that a government attorney asked her in a deposition if she had a mental illness, that unspecified defendants incorrectly stated that she wielded a cane at various times, that the Buckeye Police Department incorrectly stated that she lived in Arizona, that the defendants "spread[] false rumors" and that the Department of Defense stated that the she collected a paycheck and unemployment check simultaneously. Id. at 7-10. Perhaps, if properly pled, some of these allegations might state claims under some *state* law, but none raises a violation of the Constitution or laws of the United States.

Many of the claims are incredible. Allegations of a conspiracy spanning the federal and state governments, in which unnamed agents deployed military drones, hacked into the plaintiff's computer and "deploy[ed] martial law . . . pursuant [to] the Posse Insurrection Act 1807 twice at the [p]laintiff's home" are difficult to credit. See Dkt. No. 10-1 at 16-27. The second amended complaint states that a "hacker"—who the plaintiff asserts somehow acted on behalf of the defendants—assumed the identity of R&B singer Tyrese Gibson and attempted to scam the plaintiff. Id. at 46. The plaintiff contends that she caught the Department of Defense "red handed" stealing $1,200 out of her Thrift Savings Plan account. Id. at 61. Although the court understands that the plaintiff is struggling with many issues and has suffered, that does not require the court to accept "fantastic or delusional factual allegations." Holland v. City

of Gary, 503 F. App'x 476, 477 (7th Cir. 2013) (citing <u>Neitzke</u>, 490 U.S. at 330).
These allegations are without merit.

Finally, the Federal Rules of Civil Procedure require a complaint and its attachments to constitute "short and plain statement" showing why the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The second amended complaint, however, names around fifty defendants and sues under:

> 42 U.S.C. §2000e et seq.; Fed. R. Civ. P. 7, 10, and 11; Wisconsin Statute section § 942.01; Defamation; the False Claims Act; the Civil Service Reform Act, 5 U.S.C. §7703(b) (2); the Patriot Act; the Age Discrimination in Employment Act; 29 USC §621, et seq. and the Rehabilitation Act, 29 USC §701 to remedy acts of employment discrimination and retaliation perpetrated against a federal employee. Rule 15, Ariz. R. Civ. P., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., 42 U.S.C. § 1981a, § 1983, *George Floyd, State of Minnesota vs. Derek Michael Chauvin* 27-CR-20-12646, the False Claims Act, the Civil Service Reform Act, 5 U.S.C. §7703(b)(2), the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq., and the Rehabilitation Act, 29 USC §701 to remedy acts of employment discrimination and retaliation perpetrated against a federal employee now retired.

<u>Id.</u> at 2. The second amended complaint is neither short nor plain. Rule 8(a) "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." <u>Davis v. Anderson</u>, 718 F. App'x 420, 424 (7th Cir. 2017) (quoting <u>U.S. *ex rel.* Garst v. Lockheed-Martin Corp.</u>, 328 F.3d 374, 378 (7th Cir. 2003)) (emphasis omitted).

The court will dismiss the second amended complaint because it violates the Federal Rules of Civil Procedure and fails to state a claim for which this federal court may grant relief.

**III.    Expedited Emergency Motion for Temporary Restraining Order and Permanent Injunctive Relief (Dkt. No. 8) and Third Motion for Permission for Electronic Case Filing (Dkt. No. 9)**

Shortly after she filed the first amended complaint, the plaintiff filed an expedited emergency motion for a temporary restraining order and permanent injunctive relief. Dkt. No. 8. The motion reiterated several of the claims in the second amended complaint. It asked the court for an order "to permanently end all false claims, references, defamatory claims, based on newly acquired evidence submitted directly to District Court." Id. at 8. It also asked for a temporary restraining order based on threats and false claims made "on or about 11/26/2019, and 2/5/2020 by a State Capitol Police Officer." Id. The plaintiff asked for the order to start immediately and to be served on the defendants named in the caption and defendants specifically named in the motion. Id.

"A preliminary injunction is an extraordinary remedy." Tully v. Okeson, No. 20-2605, 2020 WL 5905325, at *2 (7th Cir. Oct. 6, 2020) (quoting Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ., 858 F.3d 1034, 1044 (7th Cir. 2017)). For a party to obtain preliminary injunctive relief, she "must make a threshold showing that: (1) absent preliminary injunctive relief, [s]he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [s]he has a reasonable likelihood of success on the merits." Id. (quoting Turnell v. CentiMark Corp., 796 F.3d 656, 662 (7th Cir. 2015)). If the party makes that threshold showing, the court then must consider "the balance of harms between the parties and the effect of granting or

18

denying a preliminary injunction on the 'public interest.'" Id. "A movant's showing of likelihood of success on the merits must be 'strong.'" Id. (quoting Ill. Republican Party v. Pritzker, No. 20-2175, 2020 WL 5246656, at *2 (7th Cir. Sept. 3, 2020)). A "strong" showing requires a "demonstration of how the applicant proposes to prove the key elements of [her] case." Id.

As indicated by the fact that the court is dismissing the second amended complaint, the plaintiff has not met her burden of demonstrating that she has a reasonable likelihood of success on the merits. The court will deny the motion for injunctive relief.

The plaintiff also filed three motions asking for permission to participate in electronic filing. Dkt. Nos. 5, 6 and 9. She indicated that participating in electronic filing would be safer during the COVID-19 pandemic. Id. at 1. She asked for "waiver of the service fee." Id. She asserted that she had reviewed the rules for electronic filing and that she had the electronic equipment necessary to file successfully. Id. at 1-2.

The court's Electronic Case Filing Policies and Procedures Manual states that parties who are representing themselves cannot file electronically unless authorized by the court. https://www.wied.uscourts.gov/e-filing/ecf-policies-and-procedures and I(A)(1). Admission and registration for e-filing are processed through PACER, Public Access to Court Electronic Records, https://pacer.uscourts.gov. It is PACER, not this court, that charges fees for electronic filing. The plaintiff would need to register with PACER, and ask PACER to waive fees. Even if she had registered with PACER, however, the

court would deny the plaintiff's motion. There is no need for her to register for e-filing because the court is dismissing the case. The court will deny the motions.

## IV.    Conclusion

The court **GRANTS** the plaintiff's request to proceed without prepaying the filing fee. Dkt. No. 2. The plaintiff must pay the filing fee as she is able.

The court **DENIES** the plaintiff's expedited emergency motion for temporary restraining order and permanent injunctive relief. Dkt. No. 8.

The court **DENIES** the plaintiff's third motion for permission for electronic case filing. Dkt. No. 9.

The court **GRANTS IN PART** and **DENIES IN PART** the plaintiff's "Motion for Correction of Record Doc. No. 10, Second Motion for IFP, Doc. 2, Fourth Motion to EFile, And Second Motion for an Expedited Emergency Temporary Restraining Order Doc. 8." Dkt. No. 12. The court **CONSTRUES** this motion as a motion for leave to file a second amended complaint and **GRANTS** the motion to the extent that the plaintiff asks the court to treat Dkt. No. 10 as a second amended complaint. The court **ORDERS** the clerk of court to docket the plaintiff's "Notice and Motion to Enforce (2) Title VII, As Amended Settlement Agreements," dkt. no. 10, as a second amended complaint. The court **DENIES AS MOOT** the plaintiff's request for the court to amend the docket. The court **GRANTS** the portion of the motion asking the court to address the other pending motions. Dkt. No. 12.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of October, 2020.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**